759 So.2d 650 (2000)
William L. THOMPSON, Appellant,
v.
STATE of Florida, Appellee. William L. Thompson, Petitioner,
v.
Harry K. Singletary, Jr., etc., Respondent.
Nos. SC87481, SC88321.
Supreme Court of Florida.
April 13, 2000.
Rehearing Denied June 13, 2000.
*653 Melissa Minsk Donoho, Assistant CCRC, Office of the Capital Collateral Regional CounselSouthern Region, Miami, Florida, for Appellant/Petitioner.
Robert A. Butterworth, Attorney General, and Fariba N. Komeily, Assistant Attorney General, Miami, Florida, for Appellee/Respondent.
PER CURIAM.
William L. Thompson, an inmate under a sentence of death, appeals the trial court's denial of a motion filed pursuant to Florida Rule of Criminal Procedure 3.850 and petitions this Court to issue a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons set forth below, we affirm the trial court's order and deny habeas relief.

FACTS AND PROCEDURAL HISTORY
The crime in this case occurred on March 30, 1976. We have previously set forth the facts of this case as follows:

*654 The appellant Thompson, Rocco Surace, Barbara Savage, and the victim Sally Ivester were staying in a motel room. The girls were instructed to contact their homes to obtain money. The victim received only $25 after telling the others that she thought she could get $200 or $300. Both men became furious. Surace ordered the victim into the bedroom, where he took off his chain belt and began hitting her in the face. Surace then forced her to undress, after which the appellant Thompson began to strike her with the chain. Both men continued to beat and torture the victim. They rammed a chair leg into the victim's vagina, tearing the inner wall and causing internal bleeding. They repeated the process with a night stick. The victim was tortured with lit cigarettes and lighters, and was forced to eat her sanitary napkin and lick spilt beer off the floor. This was followed by further severe beatings with the chain, club, and chair leg. The beatings were interrupted only when the victim was taken to a phone booth, where she was instructed to call her mother and request additional funds. After the call, the men resumed battering the victim in the motel room. The victim died as a result of internal bleeding and multiple injuries. The murder had been witnessed by Barbara Savage, who apparently feared equivalent treatment had she tried to leave the motel room.
Thompson v. State, 389 So.2d 197, 198 (Fla.1980).
Thompson pleaded guilty to first-degree murder, involuntary sexual battery and kidnapping. Thompson received a death sentence for the first-degree murder conviction and concurrent life sentences for the involuntary sexual battery and kidnapping convictions. During his first appeal, this Court found that in the plea colloquy, Thompson was not asked if any promises were made to him. See Thompson v. State, 351 So.2d 701, 701 (Fla.1977). Therefore, the Court found that Thompson was entitled to withdraw his guilty plea because of "an honest misunderstanding which contaminated the voluntariness of the pleas." Id. at 701.
On remand, Thompson again pleaded guilty to the charges. The trial court again sentenced Thompson to death for the first-degree murder conviction and imposed life sentences for the involuntary sexual battery and kidnapping convictions. This Court affirmed the convictions and sentences on direct appeal. See Thompson, 389 So.2d at 200. Subsequently, we affirmed the trial court's order denying relief on Thompson's first postconviction motion, in which Thompson claimed that his codefendant Surace was the dominant actor in the murder and that Surace's life sentence rendered the death sentence disproportionate. See Thompson v. State, 410 So.2d 500 (Fla.1982).
Thompson then pursued relief in the federal courts, which was denied. See Thompson v. Wainwright, 787 F.2d 1447 (11th Cir.1986) (affirming denial of petition for writ of habeas corpus); Thompson v. Wainwright, 714 F.2d 1495 (11th Cir.1983) (reversing federal district court decision rejecting the State's waiver of exhaustion of remedies).
Returning to state court, Thompson brought a second postconviction motion and petitioned this Court for a writ of habeas corpus. As required by the United States Supreme Court's decision in Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), this Court vacated the death sentence and remanded for resentencing because harmful error occurred when the jury was instructed that it could not consider non-statutory mitigation.[1]See Thompson v. Dugger, 515 So.2d 173 (Fla.1987). Upon resentencing, the *655 jury recommended death by a vote of seven to five, and the trial court again imposed the death penalty. See Thompson v. State, 619 So.2d 261 (Fla.1993). The trial judge found four aggravating circumstances applied: (1) the murder was committed while Thompson was engaged in the commission of the crime of sexual battery; (2) the murder was committed for financial gain; (3) the murder was especially heinous, atrocious, or cruel (HAC); and (4) the murder was cold, calculated, and premeditated (CCP). See id. at 264. The trial judge rejected all mitigation, finding that although there was evidence Thompson scored in the dull-normal range in intelligence tests, other evidence showed he functioned at a higher level. On appeal, we affirmed the death sentence.[2]See id.
Thompson initiated the present proceedings in 1995 when he filed a postconviction motion in the trial court pursuant to Florida Rule of Criminal Procedure 3.850. The trial court summarily denied the 3.850 motion without holding an evidentiary hearing. Thompson appealed the denial of postconviction relief and also filed a petition for writ of habeas corpus in this Court.
While the appeal and habeas petition were pending in this Court, we granted the motion filed by the State to relinquish jurisdiction for the purpose of holding a Huff[3] hearing. After holding the Huff hearing, the trial court again summarily denied Thompson's claims. Thompson raises eighteen issues in his appeal of this summary denial,[4] as well as thirty-six *656 claims in a petition for a writ of habeas corpus.[5]

*657 ANALYSIS
We first summarily dispose of the issues that are procedurally barred because they have already been raised and considered by this Court in prior proceedings.[6]See, e.g., Gaskin v. State, 737 So.2d 509, 513 n. 6 (Fla.1999). We have considered Thompson's third postconviction issue, that the trial court erred in summarily denying the motion for postconviction relief, in conjunction with the other substantive claims. For the reasons expressed in this opinion, we affirm the trial court's summary denial of the 3.850 motion.

A. Public Records Claim
In his first postconviction issue, Thompson contends that the trial court erred in summarily denying his claim that various state agencies had failed to comply with his public record requests. At a status hearing, collateral counsel acknowledged that many public records had been received since the 3.850 motion had been originally filed in 1995, and that a hearing should be held so that the agencies could prove their compliance. However, collateral counsel did not specifically allege at *658 the Huff hearing which agencies had wrongfully withheld documents in violation of chapter 119, or what type of documents had been wrongfully withheld. Instead, collateral counsel pointed to the thin size of the files received as indicating that documents had been wrongfully withheld.
The State argued in the trial court that Thompson had waived his public records claims because he had not filed a motion to compel production with the state agencies. While collateral counsel suggested to the trial court that she be allowed to file motions to compel production and set an evidentiary hearing, she also argued that Thompson was not required to file a motion to compel in order to preserve his claims. The trial court agreed with the State that Thompson had waived the public records issue by not pursuing the records in the trial court. The trial court also made an alternative finding that the State Attorney's office and the prosecuting law enforcement agency, the Metro-Dade Police Department, had produced their public records as required by chapter 119.
At the outset, we must determine which records requests are cognizable in this proceeding. Thompson's postconviction claim alleged that various agencies had withheld public records. Prior to the promulgation of rule 3.852 in 1996, it was clear that in postconviction proceedings on defendants' rule 3.850 motions, defendants could compel the production of public records from the prosecuting State Attorney's Offices and the local law enforcement agencies that had investigated the crime. See, e.g., Reed v. State, 640 So.2d 1094, 1098 (Fla.1994); Hoffman v. State, 613 So.2d 405, 406 (Fla.1992). However, "with respect to agencies outside the judicial circuit in which the case was tried and those within the circuit which have no connection with the state attorney, requests for public records should be pursued under the procedure outlined in chapter 119, Florida Statutes." Hoffman, 613 So.2d at 406 (emphasis supplied). Thus, at the time these requests were filed, the only public record claims cognizable in the 3.850 motion were the noncompliance of the State Attorney's office and the prosecuting law enforcement agency, the Metro-Dade Police Department.
At the time rule 3.852 went into effect in 1996, all pending chapter 119 requests could be consolidated with the defendant's postconviction proceeding. See Fla. R.Crim. Pro. 3.852(i)(2) (1996). In Valle v. State, 705 So.2d 1331, 1335 (Fla.1997), this Court stated that because the capital defendant had voluntarily dismissed his independent chapter 119 action before rule 3.852 went into effect, his public records claims against other agencies were no longer "pending" and therefore were not cognizable under rule 3.852. Similarly, in this case, no independent action under chapter 119 was pending to enforce compliance with Thompson's other public records claims when rule 3.852 went into effect. Thus, the promulgation of rule 3.852 did not make the 1995 records requests filed against agencies other than the State Attorney and Metro-Dade Police Department cognizable in Thompson's postconviction motion.
On the day before the Huff hearing, Thompson filed a second round of "initial records requests" to these other agencies through rule 3.852. However, rule 3.852 provides that it cannot be used to reinitiate public records requests for records that had been requested before the rule went into effect. See Fla. R.Crim. Pro. 3.852(i)(1) (1996); see also Fla. R.Crim. P. 3.852(a)(2). Further, Thompson neither mentioned these outstanding requests at the Huff hearing, filed a motion to compel compliance as required by rule 3.852, nor sought a hearing on the agencies' compliance with these new requests. Thus, Thompson has waived any claim with respect to these additional records requests because he did not pursue the records in the trial court. See Gaskin, 737 So.2d at 518; Lopez v. Singletary, 634 So.2d 1054, 1058 (Fla.1993).
*659 With respect to the records held by the police department and the State Attorney's Office, this Court has stated that an evidentiary hearing is required under an initial rule 3.850 motion unless the motion and record conclusively show that the movant is entitled to no relief. See, e.g., Downs v. State, 740 So.2d 506, 510 (Fla. 1999); Fla. R.Crim. Pro. 3.850(d). However, this Court recently rejected the argument that an evidentiary hearing is required to resolve every postconviction motion that alleges a public records violation. See Downs, 740 So.2d at 510-11. The defendant must support his motion seeking postconviction relief with specific factual allegations. See id.; Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998). For example, in Downs, the defendant alleged that a law enforcement agency had withheld notes of witness interviews. 740 So.2d at 510. The record custodian stated that all records had been disclosed, and because the defendant did not proffer any contrary evidence indicating that the notes existed, the Court in Downs found that summary denial was appropriate. Id. at 510-11.
Similar to the defendant in Downs, Thompson points to the relatively thin size of the law enforcement agency file as evidence that records have been withheld. However, unlike in Downs, Thompson has not even indicated which specific agencies remain in noncompliance with the records requests, let alone the types of records that have been withheld. The Assistant State Attorney represented that the investigating law enforcement agency and the State Attorney's Office had disclosed their records as required by chapter 119. Thus, we affirm the trial court's summary denial because Thompson did not make specific factual allegations concerning which agencies had failed to comply with the records requests or the types of records that were withheld.

B. Motion to Disqualify
In his second postconviction claim, Thompson asserts that the trial judge presiding over the Huff hearing erred in denying Thompson's motion to disqualify. During the first Huff hearing held on October 31, 1996, the trial court and parties were discussing Thompson's public records claims. At a sidebar conference held off the record but in the presence of the Assistant State Attorney and collateral counsel, the trial judge stated that she was inclined to have the State prepare an order providing that Thompson had either waived his right to public records or the State had fully complied with its obligation to produce the records. The trial judge asked the Assistant State Attorney, "You say there is a way I can deny this?" Then, on the record, the judge orally ruled that Thompson had either waived this claim, or alternatively, the State had fully produced the records. Thompson filed a motion to disqualify on the basis of this off-the-record exchange.
We affirm the trial court's denial of the motion to disqualify because the motion to disqualify was not legally sufficient. A motion to disqualify a judge "must be well-founded and contain facts germane to the judge's undue bias, prejudice, or sympathy." Rivera v. State, 717 So.2d 477, 480-81 (Fla.1998) (quoting Jackson v. State, 599 So.2d 103, 107 (Fla.1992)). The judge should grant a motion to disqualify if "it shows that the party making the motion has a well-grounded fear that he or she will not receive a fair trial from the presiding judge." Barwick v. State, 660 So.2d 685, 691 (Fla.1995). However, the fact that a judge has ruled adversely to the party in the past does not constitute a legally sufficient ground for a motion to disqualify. See, e.g., id. at 692; Jackson v. State, 599 So.2d 103, 107 (Fla.1992). Similarly, a court's questioning of parties as to their position does not alone constitute legally sufficient grounds for disqualification. See Nateman v. Greenbaum, 582 So.2d 643, 644 (Fla. 3d DCA 1991).
In this case, the trial court conducted a sidebar conference and asked the *660 State, in the presence of collateral counsel, whether the motion could be denied without holding an evidentiary hearing. This interchange constituted a clarification of the parties' positions in the presence of opposing counsel. The trial court stated how it was inclined to rule, went back on the record, and ruled accordingly. The trial court then asked the State to prepare a proposed order and asked Thompson to file any objections to the order so the court could take them into consideration. The sidebar exchange here does not constitute prejudging of the issues before the judge. Because an adverse ruling is not a legally sufficient ground to disqualify the trial judge, there was no error in denying the motion to disqualify as not legally sufficient. See Barwick, 660 So.2d at 692; Dragovich v. State, 492 So.2d 350, 352 (Fla.1986).

C. Inadequate Record on Direct Appeal
In his fourth postconviction claim and his first and second habeas claims, Thompson contends that this Court was not provided with an adequate record during the direct appeal because some pretrial hearings and bench conferences were not transcribed and included in the appellate record. Because Thompson did not raise any inadequacy in the appellate record during direct appeal, his postconviction claim on this basis is procedurally barred. See Torres-Arboleda v. Dugger, 636 So.2d 1321, 1323-24 (Fla.1994) (finding claim that the charge conferences should have been transcribed was procedurally barred in postconviction motion).
In his closely related habeas claims one and two, Thompson asserts that his appellate counsel was ineffective for failing to ensure that a complete record was compiled for the direct appeal and failing to raise this issue on direct appeal. Although claims of ineffectiveness of appellate counsel are not cognizable in postconviction motions, these claims are properly raised in Thompson's habeas petition. See, e.g., Downs, 740 So.2d at 509 n. 5. In order to grant habeas relief on the basis of ineffective assistance of appellate counsel, this Court must determine "first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result." Groover v. Singletary, 656 So.2d 424, 425 (Fla.1995) (quoting Pope v. Wainwright, 496 So.2d 798, 800 (Fla. 1986)); see, e.g., Teffeteller v. Dugger, 734 So.2d 1009, 1027 (Fla.1999).
We have previously rejected a similar claim that appellate counsel was ineffective for failing to have transcribed portions of the record, including parts of voir dire, the charge conference, and a discussion of whether the defendant would testify. See Ferguson v. Singletary, 632 So.2d 53, 58 (Fla.1993). We reasoned that "[h]ad appellate counsel asserted error which went uncorrected because of the missing record, or had [the defendant] pointed to errors in this petition, this claim may have had merit." Id. However, because the defendant "point[ed] to no specific error which occurred" during the portions of the record that remained untranscribed, we concluded that appellate counsel was not ineffective. Id.; see also Turner v. Dugger, 614 So.2d 1075, 1079-80 (Fla.1992) (finding defendant had not been prejudiced by failure of counsel to have charge conference transcribed). As with the defendant in Ferguson, Thompson has not pointed to any errors that occurred during the untranscribed portions of the proceedings. Therefore, these habeas claims are without merit.

D. Conflict of Interest of Trial Counsel
In his fifth postconviction issue and his ninth habeas claim, Thompson asserts that his previous counsel, Michael L. Von Zamft, had a conflict of interest. Von Zamft represented Thompson during previous *661 collateral proceedings and for the first two weeks after this Court remanded for the resentencing proceedings. On the day after this Court remanded for resentencing, Von Zamft filed a motion to withdraw as counsel because he had previously represented a person listed by the State as a potential witness in the resentencing proceedings. The trial court granted the motion to withdraw two weeks after it had been filed. When the resentencing proceedings commenced more than a year later, the witness previously represented by Von Zamft was not called by the State.
The facts that formed the basis for this alleged conflict of interest were known to Thomson at the time of his direct appeal. Cf. Harich v. State, 542 So.2d 980, 981 (Fla.1989) (finding conflict of interest claim was not procedurally barred because it could not have been discovered previously through due diligence). Therefore, the trial court correctly found that this post-conviction claim was procedurally barred because it should have been raised on direct appeal. See Jackson v. Dugger, 633 So.2d 1051, 1055 (Fla.1993) (finding claim that trial counsel had a conflict of interest procedurally barred in 3.850 motion); Koon v. Dugger, 619 So.2d 246, 247-48 (Fla.1993) (same).
Thompson alternatively claims in his habeas petition that appellate counsel was ineffective for failing to raise this issue. However, we find this claim to be without merit. "To prove a claim that an actual conflict of interest existed between a defendant and his counsel, the defendant must show that his counsel actively represented conflicting interests and that the conflict adversely affected counsel's performance." Quince v. State, 732 So.2d 1059, 1063 (Fla.1999). Thompson has not alleged how any conflict during this two-week period that occurred one year prior to the resentencing proceeding adversely affected trial counsel's performance during the resentencing. Thus, the underlying substantive claim is without merit. See id. at 1063-64. Appellate counsel cannot be deemed ineffective for failing to raise meritless issues. See, e.g., Groover, 656 So.2d at 425; Chandler v. Dugger, 634 So.2d 1066, 1068 (Fla.1994).

E. Testimony of Barbara Savage
Thompson's sixth and seventh postconviction issues and thirteenth habeas claim, a portion of his twentieth habeas claim and his thirty-fourth habeas claim all center on the testimony of Barbara Savage. Savage was an eyewitness to the crime. During the resentencing proceeding, the trial court found Savage to be an unavailable witness. The State then introduced Savage's testimony from the second sentencing proceeding and Thompson introduced an affidavit in which Savage averred to the existence of mitigating circumstances. In these proceedings, Thompson makes several related claims, including that a Hitchcock error occurred during resentencing because he was unable to introduce mitigating evidence due to Savage's unavailability and that the State committed a Brady[7] violation by coercing Savage into not testifying.
During the direct appeal from this resentencing, we extensively examined the issue of Savage's unavailability and concluded that the use of Savage's prior testimony did not deny Thompson's rights to due process or confrontation. See Thompson, 619 So.2d at 265. Thompson's claims that the introduction of Savage's prior testimony resulted in a Hitchcock error are procedurally barred because Thompson already raised this claim on direct appeal,[8] and we decided the issue against him. See id. "As we held in Medina v. State, 573 So.2d 293, 295 (Fla.1990), `[p]roceedings under rule 3.850 are not to be used as a second appeal.'" Rutherford v. State, 727 *662 So.2d 216, 218-19 n. 2 (Fla.1998). Further, we deny habeas claims twenty and thirty-four. Appellate counsel cannot be deemed ineffective because these claims were actually raised on direct appeal. See, e.g., Groover, 656 So.2d at 425.
In a closely related issue, Thompson claims that the State violated Brady by "frightening" Savage into becoming an unavailable witness. (Appellant's Initial Brief at 40.) According to Thompson, the Assistant State Attorney told Savage that if she failed to check in with him prior to trial, the Assistant State Attorney would contact local authorities. The trial court found that this claim was procedurally barred because Thompson raised this issue during the direct appeal from the resentencing. Assuming that Thompson is correct that this issue was not procedurally barred because he did not raise a Brady claim during the direct appeal and could not have raised this issue on direct appeal because the information upon which the claim is based was not available at that time, we nevertheless affirm the trial court's decision as the Brady claim is without merit. See Caso v. State, 524 So.2d 422, 424 (Fla.1988) ("A conclusion or decision of a trial court will generally be affirmed, even when based on erroneous reasoning, if the evidence or an alternative theory supports it."); see also State v. Covington, 392 So.2d 1321, 1323 (Fla.1981) (affirming order under review on different grounds than those advanced by the trial court).
In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Recently, the Court explained that a Brady claim has three elements: "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). A defendant is prejudiced by the suppression of exculpatory evidence if it is material, in other words if "there is a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." Id. at 1952. "Reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (plurality); see Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).
However, taking Thompson's allegations as true, it is difficult to characterize the Assistant State Attorney's statement that he would call local law enforcement authorities in Georgia if Savage did not check in with the State prior to trial as the suppression of exculpatory evidence. Instead, it appears to be an attempt by the State to secure the presence of the witness.
Even assuming that these actions could constitute the suppression of exculpatory evidence, this claim is meritless because Savage's testimony would not be considered material under Strickler, Kyles, and Bagley. The State here introduced Savage's former testimony to describe the circumstances of the crime. This testimony was corroborated by Thompson's confession made close to the time of the crime as well as his testimony in his codefendant Surace's trial. Further, Thompson introduced Savage's affidavit to support mitigating factors at trial. Although Thompson alleges that if available to testify, Savage would have given additional mitigating testimony concerning Thompson's intoxication at the time of his offense, her testimony could not "reasonably be taken to put the whole case in such a different light as to undermine confidence *663 in the verdict." Kyles, 514 U.S. at 435, 115 S.Ct. 1555. Thus, we find this postconviction claim to be without merit, and also deny the habeas ineffective assistance of appellate counsel claim because appellate counsel cannot be deemed ineffective for failing to raise a meritless issue. See, e.g., Groover, 656 So.2d at 425.

F. Ineffectiveness of Counsel
In his ninth postconviction issue, Thompson raises a myriad of ineffective assistance of trial counsel claims, which the trial court summarily denied because the issues had either been fully litigated on direct appeal or the assertions did not meet the requirements of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In portions of claim twenty of his habeas petition, Thompson reasserts many of these claims including a sentence that appellate counsel was ineffective for failing to raise the issues on direct appeal.
Under rule 3.850(d), postconviction defendants are entitled to an evidentiary hearing on an initial 3.850 motion unless the motion and record conclusively show that no relief is warranted. See Gaskin, 737 So.2d at 516; Fla. R. Civ. Pro. 3.850(d). In the seminal case setting forth the standard under which courts should evaluate claims of ineffectiveness of counsel, the United States Supreme Court explained:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland, 466 U.S. at 687, 104 S.Ct. 2052 (emphasis supplied); see Rutherford, 727 So.2d at 219 (quoting Strickland). An evidentiary hearing is required on a postconviction claim of ineffectiveness of trial counsel if the motion contains "specific `facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant.'" Gaskin, 737 So.2d at 516 (quoting Roberts v. State, 568 So.2d 1255, 1259 (Fla.1990)). When reviewing a trial court's summary denial, this Court must accept as true the defendant's factual allegations to the extent they are not rebutted by the record. See Gaskin, 737 So.2d at 516. For the reasons expressed below, we affirm the trial court's denial of postconviction relief and find the habeas claims to be meritless.
At the outset, we note that "allegations of ineffective assistance of counsel cannot be used to circumvent the rule that postconviction proceedings cannot serve as a second appeal." Teffeteller, 734 So.2d at 1023. On direct appeal, this Court has already considered many of the substantive claims now recast as ineffectiveness of trial counsel and found them to be without merit.[9] We thus affirm the trial court's *664 order denying relief on Thompson's claims that trial counsel had been ineffective in not objecting more "strenuously" to the admission of autopsy photographs, failing to request that the trial court conduct individual voir dire of the jurors, and failing to secure the admission of additional mitigating evidence during the resentencing proceedings.
Thompson asserts that defense counsel was ineffective for failing to object to several improper remarks by the prosecutor. Because none of these prosecutorial comments would have constituted reversible error had they been objected to at trial, we affirm the trial court ruling summarily denying this claim. See Turner, 614 So.2d at 1079 (rejecting claim that counsel was ineffective for failing to object where improper prosecutorial comments did not have the effect of depriving the defendant of a fair trial). In addition, we deny the corresponding habeas claim seventeen as meritless because appellate counsel cannot be deemed ineffective for failing to raise improper comment on direct appeal that would not have constituted reversible error. See, e.g., Teffeteller, 734 So.2d at 1027; cf. Johnson v. Wainwright, 498 So.2d 938, 939 (Fla.1986) (granting habeas relief after finding that appellate counsel was ineffective for failing to raise an issue that was properly preserved and would have constituted reversible error had it been raised on direct appeal).
Thompson argues that defense counsel's closing argument was deficient because counsel stated that the consideration of mitigating evidence should be limited to "a few enumerated examples" and conceded the applicability of the HAC aggravator. As for arguments concerning mitigating factors, contrary to Thompson's allegations, the record reflects that defense counsel told the jury they could consider in mitigation "anything else" that the jury had heard. Defense counsel actually argued the applicability of many nonstatutory mitigating factors, including that Thompson consumed alcohol and drugs on the day of the crime, "mental debilitation," his troubled family background, Thompson was less culpable than Surace, potential for rehabilitation as shown by the fact that Thompson earned his G.E.D., brain damage, and remorse.
When discussing aggravating circumstances, defense counsel stated that out of ten statutory aggravating circumstances, the State had only argued that four were applicable and in the "light most favorable to the prosecutor" three may have been proven. When defense counsel's statements are taken in context, these statements do not constitute deficient performance.
Thompson argues that counsel was ineffective for failing to request an instruction explaining to the jury why Thompson was being resentenced twelve years after the crime, failing to object to questions from the State suggesting that Thompson might be released from prison in thirteen years, and failing to introduce evidence that he would not be eligible for parole. The record shows that defense counsel informed the jury that the reason the resentencing proceedings were being held was because this Court had twice reversed the death penalty. Thus, counsel's performance was not deficient for failing to also request a trial court instruction to this effect. We therefore also deny Thompson's habeas claim thirty-three, that appellate counsel was ineffective for failing to raise this issue.
In addition, counsel's failure to request instruction of the jury that Thompson would not be released from prison or eligible for parole does not constitute deficient performance under Strickland because the sentencing statute allowing juries to recommend a sentence of life *665 without the opportunity for parole only became effective in 1994, after the resentencing proceeding in this case. See § 775.082(1) (Supp.1994); Bates v. State, 750 So.2d 6 (Fla.1999). Further, the trial court instructed the jury that Thompson had received life sentences on the kidnapping and sexual battery charges. In addition, the jury heard the testimony of Surace, who also received life sentences on these charges, that he would not be eligible for parole for thirty years. Accordingly, Thompson has not shown deficient performance. We also deny habeas claim thirty-one as meritless because appellate counsel's performance was not deficient for failing to raise this issue on direct appeal.
Thompson also raises error in various standard jury instructions, asserting that trial counsel was ineffective for failing to object to these instructions and appellate counsel was ineffective for failing to raise these issues on direct appeal.[10] The substantive challenges to these jury instructions are procedurally barred because Thompson could have raised these claims on direct appeal. See Valle, 705 So.2d at 1336; Harvey v. Dugger, 656 So.2d 1253, 1255-56 (Fla.1995).
As for Thompson's alternative ineffectiveness claims, we have previously stated that trial counsel's failure to object to standard jury instructions that have not been invalidated by this Court does not render counsel's performance deficient. See Downs, 740 So.2d at 518. We find to be without merit Thompson's claims that counsel was ineffective for failing to object to instructions that failed to instruct the jurors on the definition of reasonable doubt, see Archer v. State, 673 So.2d 17, 20 (Fla.1996) (finding no error when a jury is instructed on reasonable doubt but not given a definition of the term), that impermissibly shifted the burden of proof to the defendant to establish that death was not an appropriate sentence, see, e.g., Downs, 740 So.2d at 517 n. 5 (finding claim that counsel failed to object to instructions that allegedly shifted the burden of proving that death is not an appropriate penalty to the defendant to be without merit as a matter of law); Demps v. Dugger, 714 So.2d 365, 368 & n. 8 (Fla.1998) (noting that the Court had rejected this claim many times), and that diluted the jury's sense of sentencing responsibility, see Teffeteller, 734 So.2d at 1023-24. We also affirm the trial court's denial of Thompson's claim that counsel was ineffective for failing to object to the standard instruction on expert witnesses, which has not been invalidated by this Court, because counsel's performance was not deficient for failing to object to these instructions. We also deny Thompson's corresponding habeas claims of ineffectiveness of appellate counsel for failing to raise these issues on direct appeal because counsel cannot be deemed ineffective for failing to object to meritless issues. See Groover, 656 So.2d at 425.
Thompson also alleges that counsel was ineffective for failing to secure Thompson's right to the assistance of mental health professionals under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and in habeas issue twenty-one, he argues that appellate counsel was ineffective for failing to raise this issue on appeal. Ake requires that an indigent defendant be afforded the assistance of a psychiatrist when his or her mental state is at issue. Id. at 83, 105 S.Ct. 1087. However, Thompson *666 had the assistance of a psychiatrist and two psychologists during the resentencing proceeding. Thompson makes no specific allegations as to how his counsel was deficient in failing to prepare the psychiatrists or how their evaluations would have changed had counsel performed effectively. Thus, these claims are insufficient.
Thompson also argues that counsel was ineffective for failing to secure his presence during a hearing concerning the sequestration of the victim's mother. However, this legal argument was reargued in Thompson's presence and decided in his presence. Thompson also points to his counsel's failure to secure his presence during a hearing to reimburse defense counsel's costs. However, a defendant only "has a constitutional right to be present at all crucial stages of his trial where his absence might frustrate the fairness of the proceedings." Garcia v. State, 492 So.2d 360, 363 (Fla.1986); see Cole v. State, 701 So.2d 845, 850 (Fla.1997), cert. denied, 523 U.S. 1051, 118 S.Ct. 1370, 140 L.Ed.2d 519 (1998). Because of both the nature of the proceedings and the fact that Thompson would have been of no assistance to counsel in making these purely legal arguments, his absence at a hearing concerning the reimbursement of defense counsel's costs neither violated his constitutional rights nor frustrated the fairness of the proceedings. See Cole, 701 So.2d at 850; Garcia, 492 So.2d at 363. Thus, these ineffectiveness claims are without merit.
Thompson argues that the trial court should have granted defense counsel's motion to disqualify the Assistant State Attorney so that the defense could call him as a witness concerning the availability of witness Savage. However, the trial court is not required to grant a motion to disqualify just because the defense would like to call the State as a witness. See Scott v. State, 717 So.2d 908 (Fla.), cert. denied, 525 U.S. 972, 119 S.Ct. 425, 142 L.Ed.2d 346 (1998).
Thompson also claims that defense counsel was ineffective for failing to control persons in the courtroom observing the trial. However, the record reflects that the jury was removed immediately after unknown people "sighed" and said "oh my God." Thompson fails to allege how he was prejudiced by this. Finally, Thompson's claim that counsel was ineffective for failing to object to improper victim impact evidence has already been decided adversely to him. See Jones v. State, 748 So.2d 1012 (Fla.1999); Bonifay v. State, 680 So.2d 413, 419 (Fla.1996).
In his tenth postconviction claim, Thompson alleges that his conviction rests on an unconstitutional automatic aggravating circumstance, that the murder was committed during the course of a felony (the sexual battery). This claim is procedurally barred because it could have been raised on direct appeal. To the extent that this claim also raised the ineffectiveness of trial counsel for the failure of counsel to properly preserve this issue for appellate review, we find the claim to be without merit. See Banks v. State, 700 So.2d 363, 367 (Fla.1997) (finding that instruction of aggravating circumstance of committed while engaged in a sexual battery does not constitute an automatic aggravator), cert. denied, 523 U.S. 1026, 118 S.Ct. 1314, 140 L.Ed.2d 477 (1998). Accordingly, counsel was not ineffective for failing to preserve this issue. Likewise, we also deny habeas claim nineteen because appellate counsel cannot be deemed ineffective for failing to raise meritless issues. See Groover, 656 So.2d at 425.
Similarly, Thompson asserts in postconviction claim fifteen that the kidnapping and sexual battery convictions improperly constituted one aggravating circumstance because the jury was not instructed to consider this circumstance as one aggravating *667 factor.[11] In addition, Thompson claims that the HAC and CCP aggravating circumstances were improperly doubled because the same facts were used to support both aggravating circumstances. However, the trial court properly found that these claims are conclusively refuted by the sentencing order, which shows that the trial court did not improperly double these aggravating circumstances. See Downs, 740 So.2d at 517 n. 5 (finding claims that jury instructions allowed improper doubling of aggravators to be insufficient where the judge did not double aggravators in sentencing order). We thus deny habeas claim twenty-eight because appellate counsel's performance was not deficient for failing to raise this meritless issue.
In conclusion, we affirm the trial court's summary denial of these ineffectiveness of trial counsel claims and deny habeas relief.

G. Espinosa Error
Thompson attacks the jury instructions for CCP as unconstitutionally vague in postconviction issue thirteen and also asserts that trial counsel was ineffective for failing to object to these instructions. The substantive claims that these instructions were unconstitutionally vague is procedurally barred because Thompson did not object to the instructions or request legally sufficient alternative instructions. See Harvey, 656 So.2d at 1258.
As for Thompson's claim that counsel was ineffective for failing to properly preserve this issue, we affirm the trial court's decision summarily denying this claim. Thompson's trial took place prior to the United States Supreme Court's decision in Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), which found reversible error where either the judge or jury considered an invalid aggravating circumstance. The standard jury instructions given in this case had been upheld by this Court at the time of the trial. We have previously stated that counsel's performance cannot be considered deficient for failing to object to standard jury instructions that had been upheld previously on direct appeal. See Downs, 740 So.2d at 517-18; Harvey, 656 So.2d at 1258.
Likewise, we deny Thompson's twenty-third habeas claim, in which he asserts that appellate counsel was ineffective for failing to raise this issue, and his twenty-fifth habeas claim, in which Thompson argues that appellate counsel was ineffective for failing to assert that the applicability of the aggravating circumstances were overbroadly argued by the prosecutor and that appellate counsel was ineffective for failing to raise this issue on direct appeal. Appellate counsel's performance is not deficient for failing to raise an issue on appeal that was not properly preserved. See Lopez, 634 So.2d at 1059. Further, appellate counsel challenged the applicability of the CCP aggravator on direct appeal and this Court agreed that the evidence did not support this aggravator but "the improper use of the `cold, calculated and premeditated' aggravating factor was harmless error under the circumstances of this case." Thompson, 619 So.2d at 266. Even if we considered appellate counsel's performance to be deficient for failing to specifically argue that the jury instructions for the CCP aggravating circumstance were overbroad, we find that Thompson was not prejudiced by this omission because we found the consideration of the CCP aggravating circumstance to be harmless error on direct appeal.

CONCLUSION
Without further elaboration, we affirm the denial of the remainder of Thompson's 3.850 claims[12] and deny the *668 remainder of his habeas claims.[13] For the reasons expressed in this opinion, we affirm the trial court's order denying postconviction relief and we deny the petition for habeas corpus.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] In Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality), the United States Supreme Court held that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Id. at 604, 98 S.Ct. 2954 (footnote omitted); see also Skipper v. South Carolina, 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). In reaching this conclusion in Lockett, the Court reasoned that "[g]iven that the imposition of death by public authority is so profoundly different from all other penalties, we cannot avoid the conclusion that an individualized decision is essential in capital cases." 438 U.S. at 605, 98 S.Ct. 2954. In its later decision in Hitchcock v. Dugger, 481 U.S. 393, 399, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), the United States Supreme Court vacated the death penalty of a Florida defendant where the State did not establish the harmlessness of the error occurring when the defendant's advisory jury was instructed not to consider nonstatutory mitigation and the trial judge did not consider nonstatutory mitigation.
[2] We reached the following conclusions: (1) The trial court did not err in allowing the State to admit the transcript from Barbara Savage's prior testimony at the first sentencing proceeding because Thompson had an opportunity to cross-examine Savage during the first trial. (2) The Court did not err in denying individual voir dire to determine whether Thompson's jurors were biased because they knew Thompson had already served thirteen years of his sentence and he could be released in twelve years if he were given a life sentence. (3) The trial court did not err in admitting Thompson's prior testimony during Surace's trial, in which Thompson testified he was responsible for the murder. This statement was prior inconsistent testimony admissible under section 90.801(2)(a), Florida Statutes (1987).(4) Although the trial court erred in admitting autopsy photos, the error was harmless in light of the testimony of the eyewitness, the medical examiner, Thompson himself, and the other photographs. (5) The trial court did not abuse its discretion in refusing to let defense witnesses give their personal opinion as to whether Thompson should be given the death penalty. (6) The trial court was not required to find the mitigating circumstances found in original proceeding. (7) Although the trial court improperly found the CCP aggravator to be applicable, the error was harmless. (8) Although the HAC instructions were defective, the error was harmless because this murder was HAC under any definition. (9) The trial court did not err in rejecting all mitigating circumstances asserted by Thompson because the evidence introduced by the State supported the trial court's finding. (10) Thompson's claim that the death penalty statute is unconstitutional was without merit. See generally Thompson v. State, 619 So.2d 261 (Fla. 1993).
[3] Huff v. State, 495 So.2d 145 (Fla.1986).
[4] Thompson's claims on appeal are: (1) the trial court erred in summarily denying his claim that the State denied public records in violation of chapter 119, Florida Statutes; (2) the trial judge presiding over the postconviction proceedings should have granted Thompson's motion to disqualify; (3) Thompson should have been granted an evidentiary hearing on his 3.850 claims; (4) the failure to have the full appellate record transcribed denied Thompson his Sixth, Eighth, and Fourteenth Amendment rights; (5) Thompson's Sixth Amendment rights were violated because his counsel had a conflict of interest; (6) the State withheld material, exculpatory evidence; (7) the admission of Barbara Savage's prior testimony during resentencing repeated the Hitchcock error that had caused this Court to previously vacate the death sentence; (8) the trial court improperly excluded mitigating evidence; (9) State misconduct and ineffectiveness of trial counsel denied Thompson a fair trial; (10) Thompson's death sentence rests on an unconstitutional aggravating circumstance: that the murder was committed in the course of a sexual battery; (11) the jury instructions unconstitutionally shifted to Thompson the burden of proving that death was not an appropriate sentence; (12) the jury instructions unconstitutionally diluted the jury's sense of sentencing responsibility; (13) the jury was improperly instructed on the cold, calculated, and premeditated aggravating circumstance and this Court conducted a constitutionally deficient harmless error analysis when it struck this aggravating circumstance on direct appeal; (14) Thompson was incompetent to make a knowing, intelligent and voluntary guilty plea; (15) the trial court erred in permitting the introduction of nonstatutory aggravating factors and considering the same acts to support different aggravating factors; (16) the rule prohibiting Thompson from contacting jurors to determine if misconduct occurred is unconstitutional; (17) Thompson is not competent to be executed; and (18) electrocution constitutes cruel and unusual punishment.
[5] Many of the issues raised in the habeas petition overlap with those presented in the motion for postconviction relief. In addition, many of the habeas issues are listed multiple times throughout the petition. We take this opportunity to remind counsel once again of their professional duty to "winnow out weaker arguments in order to concentrate on key issues. We have noted an increasing tendency in death penalty cases toward longer briefs with more issues which submerge and dilute arguably meritorious issues." Cave v. State, 476 So.2d 180, 183 n. 1 (Fla.1985); see also Jones v. Barnes, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); Demps v. Dugger, 714 So.2d 365, 368 (Fla.1998) ("By raising the issue in the petition for writ of habeas corpus, in addition to the rule 3.850 petition, collateral counsel has accomplished nothing except to unnecessarily burden this Court with redundant material.") (quoting Blanco v. Wainwright, 507 So.2d 1377, 1384 (Fla.1987)).

In issues (1) and (2), Thompson claims that his appellate transcript was unreliable and in issues (4), (5), (6), (7), (8), and (10), Thompson claims that he was not competent when he pleaded guilty during his second trial, sentencing phase, and appeal, and that he was denied the assistance of mental health experts and counsel. The remainder of Thompson's habeas claims are as follows: (3) this Court conducted an improper harmless error analysis during direct appeal; (9) counsel had a conflict of interest and appellate counsel was ineffective for failing to raise this issue on direct appeal; (11) the introduction of autopsy photographs at trial denied him a fair trial; (12) newly discovered evidence shows his conviction and sentence are constitutionally unreliable; (13) the State withheld material exculpatory evidence regarding the availability of Barbara Savage to testify at the resentencing; (14) Thompson was denied constitutionally effective trial counsel and appellate counsel was ineffective for failing to raise this issue; (15) the jury instructions impermissibly shifted the burden to Thompson to prove that death is an inappropriate penalty; (16) the trial court failed to find mitigating circumstances present in the record; (17) prosecutorial misconduct rendered the death sentence unreliable and appellate counsel was ineffective for failing to raise this issue on appeal; (18) Florida's sentencing scheme is unconstitutional; (19) the aggravating circumstance that the murder was committed while Thompson was engaged in a sexual battery constitutes an automatic aggravating factor and the jury instructions for this factor were unconstitutionally vague; (20) appellate counsel was ineffective; (21) Thompson did not receive adequate mental health assistance during resentencing in violation of Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (22) the jury's sense of sentencing responsibility was diluted; (23) the jury was improperly instructed on the CCP aggravator; (24) the jury instructions for the heinous, atrocious, and cruel aggravating circumstance were unconstitutionally vague; (25) the aggravating circumstances were overbroadly argued by the State; (26) the trial court was bound by res judicata to find the mitigating circumstances that had been found applicable at the prior sentencing proceeding; (27) the State argued the applicability of nonstatutory aggravating circumstances including Thompson's false testimony at Surace's trial, that he had been previously sentenced to death, and uncharged crimes; (28) the jury was not instructed to consider the kidnapping and sexual battery convictions as one aggravating circumstance, resulting in improper doubling of aggravating circumstances; (29) cumulative errors deprived Thompson of a fair trial; (30) the jury instructions did not define reasonable doubt; (31) defense counsel failed to present evidence that a life sentence is regarded by the parole commission as precluding the possibility of parole; (32) the trial court erred in failing to grant Thompson's motion to strike the jury panel or conduct individual voir dire after it learned the jury was concerned that Thompson could be released in twelve years if given a life sentence; (33) the resentencing jury should have been informed why a new penalty phase was necessary; (34) the admission of Barbara Savage's prior testimony violated his right to confrontation and repeated the Hitchcock error that had caused the case to be remanded; (35) the jury was given an erroneous instruction on expert witnesses; and (36) the trial court improperly excluded mitigating evidence during resentencing.
[6] On direct appeal from the resentencing proceedings, we considered Thompson's claims based on the trial court's exclusion of mitigating evidence, the unconstitutionality of the death penalty statute, vagueness of the jury instructions for HAC, the trial court's failure to find mitigating circumstances, the trial court's exclusion of mitigating evidence, the introduction of autopsy photographs, the trial court's denial of Thompson's motion to conduct individual voir dire or strike the jury panel, and the appropriate standard for determining whether errors were harmless. See Thompson v. State, 619 So.2d 261 (Fla.1993). Thus, we affirm the trial court's finding that 3.850 claim 8 is procedurally barred. Because appellate counsel actually raised these claims, we deny Thompson's habeas claims 3, 11, 16, 18, 24, 26, 32 and 36, which included claims that appellate counsel was ineffective for failing to raise these issues. "`Petitioner's contention that [the point] was inadequately argued merely expresses dissatisfaction with the outcome of the argument in that it did not achieve a favorable result for petitioner.' We therefore decline petitioner's invitation to utilize the writ of habeas as a vehicle for the reargument of issues which have been raised and ruled on by this Court." Routly v. Wainwright, 502 So.2d 901, 903 (Fla.1987) (quoting Steinhorst v. Wainwright, 477 So.2d 537, 540 (Fla.1985)) (alteration in original).

On direct appeal from the resentencing proceedings, Thompson also argued that his testimony at Surace's trial was used as an improper aggravating circumstance. See Thompson, 619 So.2d at 265-66. Although Thompson now raises additional arguments in support of his postconviction claim 15 and habeas claim 27, it is improper to relitigate issues asserting slightly different arguments. See Medina v. State, 573 So.2d 293, 295 (Fla. 1990). We further find these claims to be without merit, and deny his habeas claim 27 that counsel was ineffective for failing to raise these additional arguments.
In prior proceedings, we denied Thompson's claims that he had been denied the assistance of mental health experts when he pleaded guilty, see Thompson v. State, 389 So.2d 197, 199 (Fla.1980) (second direct appeal), and that trial counsel was ineffective for failing to secure adequate mental health assistance, see Thompson v. Dugger, 515 So.2d 173, 176 (Fla.1987) (second postconviction motion). Thus we affirm the trial court's finding that Thompson's 3.850 claim 14 was procedurally barred and find habeas claims 4, 5, 6, 7, 8, and 10, none of which contain allegations of newly discovered evidence, to be procedurally barred. See Downs v. State, 740 So.2d 506, 514 (Fla.1999).
[7] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[8] See Initial Brief of Appellant William Thompson at 41, Thompson v. State, 619 So.2d 261 (Fla.1993) (No. 75,499).
[9] This Court has already concluded that although the trial court erred in admitting autopsy photographs, it was harmless in light of the other photographs admitted and the testimony of the witnesses, the medical examiner, and Thompson himself. See Thompson, 619 So.2d at 266. Trial counsel objected to the admission of these photographs. We further concluded on direct appeal that the trial court did not err in excluding the testimony of the original trial judge that he would not have imposed the death penalty had this evidence been available. See id. Likewise, we rejected the claim that the admission of Barbara Savage's testimony from the previous trial violated Thompson's rights to due process and confrontation. See id. at 265. This Court also found no merit to Thompson's argument on direct appeal that the trial court failed to conduct individual voir dire after a juror expressed concern that Thompson could be released from jail in twelve years. See id. at 265. The trial court had instructed the jury that eligibility for parole was not a valid consideration. See id.
[10] In postconviction issue nine and habeas issue thirty-five, Thompson challenges the standard jury instructions on the weight to be accorded expert witnesses. In postconviction issue nine and habeas issue thirty, Thompson raises the failure of the standard penalty phase instructions to define reasonable doubt. In his eleventh postconviction claim and habeas claim fifteen, Thompson challenges standard jury instructions that he claims shifted the burden to the defendant to prove that death was not an appropriate sentence. In postconviction claim twelve and habeas claim twenty-two, Thompson asserts that standard jury instructions unconstitutionally diluted the jury's sense of sentencing responsibility.
[11] As we found in note 6, supra, the portion of this claim relating to the prosecutor's argument regarding nonstatutory aggravating circumstances is procedurally barred because it was considered and rejected on direct appeal.
[12] We affirm the trial court's finding that postconviction claim 16, that the rule prohibiting Thompson from contacting jurors to determine whether misconduct occurred, is procedurally barred because it could have been raised on direct appeal. See Gaskin v. State, 737 So.2d 509, 520 n. 6 (Fla.1999). We find that postconviction claim 18, that electrocution is cruel and unusual, is procedurally barred because it was not alleged in the post-conviction motion filed in the trial court. See generally Finney v. State, 660 So.2d 674, 683 (Fla.1995) (stating that in order to be cognizable on appeal, claims must first be raised in the trial court). We find that Thompson's claim in postconviction issue 17 that he is not competent to be executed is not yet ripe for our consideration. See Provenzano v. State, 751 So.2d 37 (Fla. 1999); Fla. R.Crim. P. 3.811(d).
[13] A number of Thompson's habeas claims also include allegations of ineffectiveness of trial counsel, which are not cognizable in a habeas petition. See Breedlove v. Singletary, 595 So.2d 8, 10 (Fla.1992). We deny habeas claim 14 because ineffectiveness of trial counsel is also not properly raised on direct appeal, see Wuornos v. State, 676 So.2d 972, 974 (Fla.1996), and appellate counsel is not ineffective for failing to raise this issue on direct appeal. See Groover, 656 So.2d at 425 (counsel is not ineffective for failing to raise meritless issues). We deny habeas claim 12 because claims of newly discovered evidence should be raised in a postconviction motion filed pursuant to rule 3.850 rather than in a petition for habeas corpus. See Steinhorst v. Singletary, 638 So.2d 33, 34 (Fla.1994). Further, this claim would have been legally insufficient even if it had been filed under rule 3.850 because Thompson only makes a conclusory statement that newly discovered evidence exists without making any specific allegation as to what facts support the newly discovered evidence claim. Cf. Gaskin, 737 So.2d at 513 n. 10 (rule 3.850 requires a "brief statement of the facts relied upon in support of the motion"). Finally, we reject Thompson's claim of cumulative error in habeas claim 29, because we have considered the individual claims and found them to be without merit. See Downs, 740 So.2d at 509 n. 5.