PER CURIAM.
Victor Marcus Farr appeals an order of the circuit court denying his motion to vacate his convictions and sentence of death filed under Florida Rule of Criminal Procedure 3.851, and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed below, we affirm the trial court’s denial of post-conviction relief and deny the petition for habeas relief.
FACTS AND PROCEDURAL HISTORY
The following facts are derived from Farr’s direct appeal;
In December 1990, Farr attempted to kidnap and then shot and wounded [Cindy Thomas and Patsy Lynch] outside a Lake City bar. He attempted to escape by forcibly taking a car in which [Chris Todd and Shirley Bryant] were sitting. [Todd] fled, but Farr managed to crank the car and escape with [Bryant] still inside. When he was pursued by officers later, Farr deliberately accelerated the car into a tree, hoping to kill himself and his hostage. [Bryant] was severely injured in the crash and died of her injuries soon thereafter. Farr was only slightly injured.
After indictment, Farr entered into an agreement with the State in which he pled guilty to all twelve counts of the indictment.[1] As part of the agreement, *773 Farr requested that the state attorney ask for the death penalty. He explained that he wanted to die. After determining that Farr was capable of knowingly and voluntarily entering the plea and that he understood its consequences, the trial court accepted the guilty plea. Farr then knowingly and voluntarily waived his right to a penalty phase jury, and the cause proceeded to sentencing.
At the time of sentencing the record contained a psychiatric report and pre-sentence investigation report containing information about Farr’s troubled childhood, numerous suicide attempts, the murder of his mother, psychological disorders resulting in hospitalization, sexual abuse suffered as. a child, and his chronic alcoholism and drug abuse, among other matters. In imposing the death penalty, the court apparently was influenced by Farr’s decision not to present a case in mitigation. The judge considered in mitigation only Farr’s apparent intoxication at the time of the murder, which the court found not to be of mitigating value and ignored the mitigating evidence contained in the presen-tence report and the psychiatric report.
In aggravation the trial court found that: (1) Farr had previously been convicted of another capital felony or of a felony involving the threat of violence to the person; (2) the homicide was committed while Farr was fleeing from the commission of a kidnapping, a robbery, two attempted kidnappings, and an attempted robbery; (3) the homicide was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws; and (4) the homicide was especially heinous, atrocious, or cruel. Based on these findings, the trial court imposed the death sentence.
Farr v. State, 621 So.2d 1368, 1369 (Fla.1993) (footnotes omitted).
On direct appeal, we affirmed Farr’s convictions, but vacated Farr’s death sentence and remanded for a new penalty phase in light of the trial court’s failure to consider all of the available mitigation. Id. at 1370.[2] At resentencing, Farr “forbade his attorney to present a case for mitigation on remand and ... Farr himself took the witness stand and systematically refuted, belied, or disclaimed virtually the entire case for mitigation that existed in the earlier appeal.” Farr v. State, 656 So.2d 448, 449 (Fla.1995). At the conclusion of the new penalty phase, Farr was once again sentenced to death by the trial court. Id. at 449.[3] Finding that the trial court did not err in rejecting the case for mitigation, this Court affirmed Farr’s death sentence on appeal.[4] Id. at 449-50.
*774 In April of 1997, Farr filed an initial motion for postconviction relief with the trial court. In June of 2005, Farr amended his motion for postconviction relief, raising the following claims: (1) his plea was invalid due to ineffective assistance of his trial counsel, William Slaughter; (2) his plea was involuntary because it was the result of physical and psychological intimidation, abuse, stress, and duress; (3) Slaughter was ineffective by failing to present a voluntary intoxication defense to the offenses charged; (4) Slaughter was ineffective by failing to investigate the facts and circumstances of the collision and failing to present evidence that the crash was an accident; (5) the State committed a Brady[5] violation; (6) Slaughter was ineffective by failing to investigate and present readily available evidence of mitigating circumstances; (7) the sentencing order was improperly authored by Farr’s prosecutor and the trial court failed to independently weigh the aggravating and mitigating circumstances and provide its reasoning for review on appeal; (8) Slaughter was ineffective by failing to investigate Farr’s psychiatric history, to obtain a proper mental health assessment, and to pursue appropriate mental health defenses; (9) Farr’s constitutional rights were violated by the State’s unlawful direct contact and communications with Farr; (10) Slaughter was ineffective by failing to object to, challenge, and confront the State’s Brady violation and the improprieties regarding the sentencing order and the State’s unlawful contact and communications with Farr in violation of Farr’s rights under the Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution; and (11) the trial court erred in denying Farr’s Motion for Judicial Disqualification in violation of his right to a full and fair postcon-viction hearing pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and their Florida counterparts. After an evidentiary hearing, the trial court denied all claims for relief. This appeal followed.
Additionally, Farr has filed a petition for writ of habeas corpus, raising four claims: (1) he was denied an adequate mental health examination; (2) appellate counsel was ineffective in failing to assert that the trial court erred in proceeding with the plea hearing and sentencing without conducting a competency evaluation hearing; (3) appellate counsel was ineffective in failing to assert that Farr’s waivers of a penalty phase jury and mitigating evidence were not knowing, intelligent, and voluntary; and (4) appellate counsel was ineffective in failing to assert that the trial court’s reliance on Farr’s unreliable self-incriminating statements resulted in the arbitrary imposition of the death penalty. We address Farr’s claims in turn below.
I. POSTCONVICTION APPEAL
1. Ineffective Assistance of Trial Counsel and Farr’s Plea of Guilty
In order to prevail on his ineffective assistance of counsel claims, Farr must demonstrate both deficiency and prejudice. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As to deficiency, Farr “must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards.” Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). As to prejudice, Farr “must demonstrate ‘a reasonable *775 probability that, but for counsel’s errors, [Farr] would not have pleaded guilty and would have insisted on going to trial.’” Grosvenor v. State, 874 So.2d 1176, 1179 (Fla.2004) (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). “Ineffectiveness [of counsel] is a mixed question of law and fact.” Strickland, 466 U.S. at 698, 104 S.Ct. 2052. Giving deference to the trial court on questions of fact, we review de novo the trial court’s legal conclusions. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004). Farr claims that the trial court erred in denying him postconviction relief because his guilty plea was invalid due to the ineffective assistance of counsel. Under this claim, Farr raises six different subclaims of ineffective assistance of counsel which allegedly led to his guilty plea. We consider each of them in turn.
a. First Ineffective Assistance of Counsel Claim
First, Farr argues that Slaughter was ineffective in failing to maintain an appropriate relationship with him, which led to Farr’s decision to plead guilty. Had Slaughter kept an appropriate relationship with him, Farr contends, there was a reasonable probability that he would not have entered a guilty plea. Specifically, Farr claims that for the first two months after Slaughter was appointed, Farr wrote repeatedly to him, and begged for Slaughter to visit him. According to Farr, after one month in jail, he had still not heard from Slaughter with the exception of a terse letter stating that he already had everything he needed to know.
The record reflects that Slaughter continuously attempted to persuade Farr not to plead guilty. Despite Slaughter’s attempts, Farr entered into the plea agreement on the condition that the State would recommend the death penalty. At the evi-dentiary hearing, Slaughter testified that he spoke with Farr for twenty to twenty-five minutes before he was appointed, met with him on six or seven, separate occasions, and communicated with him as needed.[6], Moreover, the content of Slaughter’s letters to Farr indicates that Slaughter had maintained a reasonable relationship with Farr and kept him aware of the developments in the case as they occurred.[7] At the plea hearing, Farr stated to the court that he was satisfied with Slaughter’s efforts on his behalf, and that Slaughter had attempted to persuade him not to plead guilty. Therefore, based on Slaughter’s testimony at the evidentiary hearing, Farr’s own statements at the plea hearing, and the content of Slaughter’s letters to Farr, we conclude that Slaughter’s commu *776 nications with Farr were reasonable under the circumstances. Because Slaughter was not deficient in this respect, the trial court did not err in denying this ineffective assistance of counsel claim.
b. Second Ineffective Assistance of Counsel Claim
Farr argues that Slaughter was ineffective in facilitating Farr’s guilty plea in disregard of Farr’s history of severe depression and suicide attempts. Because the record indicates that Slaughter did not disregard Farr’s mental health history, this claim is without merit, and therefore, the trial court did not err in denying it.[8]
c. Third Ineffective Assistance of Counsel Claim
Farr claims that Slaughter was ineffective in failing to present a voluntary intoxication defense,[9] which led to Farr’s decision to plead guilty.[10] To prevail on this claim, Farr must “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 88 (1955)). It is well-established that “strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” See Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000). We do not “second-guess counsel’s strategic decisions about whether to pursue an intoxication defense.” See Jones v. State, 855 So.2d 611, 616 (Fla.2003). Whether or not counsel’s strategy was the correct one in hindsight is irrelevant to the question of ineffective assistance of counsel. See Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995).
In this case, Slaughter’s undisputed testimony at the evidentiary hearing was that he had considered the intoxication defense and discussed it with Farr, but ultimately rejected it for the strategic reasons of preventing Farr’s prior criminal history from being disclosed,[11] avoiding any impeachment of the voluntary intoxication defense by Farr’s conflicting statements to the prosecution detailing the events of the night of the incidents,[12] in addition to the fact that the jury likely had a negative view of intoxication. We have said that counsel is not deficient for rejecting a voluntary intoxication defense where the defendant has “recounted the incident with ‘great detail and particularity’ ” and con *777 fessed to forming the intent to commit the felony. See Johnson v. State, 593 So.2d 206, 209 (Fla.1992). We find that Slaughter made a reasonable strategic decision to not pursue a voluntary intoxication defense. Therefore, the trial court did not err in denying this claim.
d. Fourth Ineffective Assistance of Counsel Claim
Farr next argues that Slaughter was ineffective in allowing Farr to plead guilty without conducting an independent investigation into the facts and circumstances of the twelve felonies Fan-pled guilty to, when such an investigation would have revealed facts that would have disproved the charges against him.[13]. At the evidentiary hearing, Farr presented expert testimony supporting the theory that the fatal car crash was an unintended accident. But the fact that the crash might have been accidental and unintentional is irrelevant to the felony murder charge because an intent to cause death is not an element of felony murder. See § 782.04(l)(a)2., Fla. Stat. (1990). Consequently, Slaughter “cannot be deemed deficient for failing to raise a nonmeritorious legal theory.” See Bradley v. State, 33 So.3d 664, 682 (Fla.2010) (quoting Thompson v. State, 759 So.2d 650, 665 (Fla.2000)). Farr also argues that counsel failed to investigate other facts underlying the felony murder and the other charges. However, even if we assume arguendo that Slaughter’s performance was deficient in failing to conduct a thorough investigation, the prejudice prong has not been met. There has been no demonstration that, but for Slaughter’s failure to investigate, Farr would not have pled guilty and would have insisted on going to trial. See Grosvenor, 874 So.2d at 1179. We have held that in determining whether there is a reasonable probability that the defendant would have insisted on going to trial:
a court should consider the totality of the circumstances surrounding the plea, including, such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and'the maximum possible sentence the defendant faced at a trial.
Id. at 1181-82.
Here, Farr has not set forth the facts which would have likely led to a successful defense at trial. Instead, Farr points to the fact that the fatal crash may have been an accident, which, as previously noted, is irrelevant to the felony murder charge, and that Farr was intoxicated on the night of the crash, which, as expressed above, Slaughter had considered and rejected for strategic reasons. Moreover, the record clearly indicates that Farr was fully aware and had an understanding of the plea process. The trial court questioned Farr thoroughly before accepting his plea of guilty to ensure that Farr was aware of the consequences of his plea. Under these circumstances, without demonstrating particular facts that a further investigation by counsel would have yielded, it cannot be said that but for Slaughter’s failure to investigate, he would not have pled guilty and would have insisted on going to trial. Therefore, the postconviction court did not err in denying this claim.
e. Fifth Ineffective Assistance of Counsel Claim•
Farr argues that Slaughter was ineffective in stipulating to an inaccurate and false factual basis' for Farr’s guilty plea to the charged offenses where counsel had not investigated the case, *778 thereby facilitating Farr’s guilty plea. As stated by the Fourth District Court of Appeal:
The inquiry which the court should conduct in order to determine that there is a factual basis for the plea of guilty need not be a ‘mini-trial’.... “[T]he court may satisfy itself ... [by] statements and admissions made by the defendant, or by his counsel, or by the prosecutor.... It is not a matter of weighing the evidence but only to ... make certain that a defendant does not plead guilty to an offense of which he could not possibly be guilty.”
Monroe v. State, 318 So.2d 571, 573 (Fla. 4th DCA 1975). We find that the factual basis was sufficient to support the charges against Farr. Moreover, Farr himself testified under oath at the plea hearing that the factual basis was correct. Slaughter’s stipulation to the prosecutor’s factual statement was consistent with his investigation and was not unreasonable under these circumstances. Farr has also not shown that the factual basis for his plea was inaccurate or false. Accordingly, the trial court did not err in denying this claim.
f. Sixth Ineffective Assistance of Counsel Claim,
Lastly, Farr argues that Slaughter was ineffective in failing to protect Farr from physical and psychological abuse which Farr alleged was inflicted by guards in jail prior to and during the time he agreed to plead guilty. Specifically, in his letters to Slaughter, Farr said that he was being mistreated and threatened with beatings by prison guards. On February 28, 1991, Farr was beaten in jail.[14] When Slaughter learned of this beating, he contacted the chief corrections officer and discovered that Farr was not beaten by prison guards but by other inmates, and that the guards were present to pull the inmates off of Farr. Farr was then moved to another location. After the beating, Farr did not raise further claims of mistreatment. Thus, counsel did not have further reason to look into the abuse complaints. Under these circumstances, Farr has not demonstrated what Slaughter could have done to prevent the abuse. Therefore, Slaughter’s performance was not deficient, and the trial court did not err in denying this claim.
2. Voluntariness of Farr’s Guilty Plea
Farr’s next claim is that his guilty plea was involuntary because it was the result of physical and psychological intimidation, abuse, stress, and duress. At the evidentiary hearing, Farr offered the testimonies of three of his cellmates who essentially confirmed that Farr was beaten in jail and that there was a change in Farr’s psyche after the beating.[15] Al *779 though the trial court found their testimonies not credible, it is undisputed that Farr was beaten by fellow inmates on February 28, 1991. We have long held that a guilty plea must be made “without a semblance of coercion, and without fear or duress of any kind.” Nickels v. State, 86 Fla. 208, 99 So. 121, 121 (1924). It is of no consequence that the abuse was at the hands of other inmates because the threat or coercion is not required to originate from law enforcement or a state actor for the abuse to form the basis of an involuntary plea claim. See, e.g., Sanders v. State, 662 So.2d 1372, 1374 (Fla. 1st DCA 1995). Here, however, Farr had requested the death penalty before he was beaten. In his December 21,1990, letter to Slaughter, Farr initially indicated that he wanted the death penalty and periodically requested the death penalty thereafter. Even after the beating, Farr was still unsure as to how he wanted to proceed in the ease.[16] We therefore conclude that Farr’s plea was not induced by the beating he endured while he was incarcerated, and Slaughter was not ineffective in this regard. Consequently, the postconviction court did not err in denying this claim.
3. Voluntary Intoxication Defense
Farr claims that Slaughter was ineffective in failing to present a voluntary intoxi-cátion defense. Farr raised this same issue in his first claim that such alleged ineffectiveness led to Farr’s decision to plead guilty. As we noted above, Slaughter discussed the availability of a voluntary intoxication defense with Farr, and after considering the defense, Slaughter rejected it for strategic reasons. Therefore, this claim is without merit and the trial court did not err in denying it.
4. Failure to Investigate
Farr also claims that Slaughter was ineffective in failing to investigate the facts and circumstances of the fatal crash and to present evidence that the crash was an accident. Farr raised this same issue in his first claim that, but for Slaughter’s failure to investigate, Farr would not have pled guilty and would have insisted on going to trial. As we concluded above, this claim is without merit because even if Slaughter’s performance was deficient, Farr fails to meet the prejudice prong.
5. Brady Claim
In this next claim, Farr asserts that the State violated Brady by withholding exculpatory evidence and information from Farr and Slaughter.[17] Pursuant to Brady, the State must disclose material information within its possession or control *780 that is favorable to the defense. 373 U.S. at 87, 83 S.Ct. 1194; see also Mordenti v. State, 894 So.2d 161, 168 (Fla.2004). To succeed on a Brady claim, Farr must prove that (1) favorable evidence — either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because such evidence was material Farr was prejudiced. See Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); see also Way v. State, 760 So.2d 903, 910 (Fla.2000).
Farr alleges that the State withheld evidence of a polygraph report made in connection with different offenses in Texas that revealed that Farr was not truthful. Because this evidence concerned Farr’s own statements, it was known to Farr, and therefore, Farr cannot show that had the polygraph report been disclosed, Farr would not have pled guilty to the charges against him. Farr also claims that the State withheld evidence of the prosecutor’s notes on the case: “Tell Jerry About Grand Juror Residence Problem” and “problem of victim’s Identifying the Defendant.” Farr has failed to show that these “problems” were favorable and material evidence suppressed by the State.
Farr also claims that the State withheld evidence that statements made to the police concerning Farr’s alcohol consumption and level of intoxication were intentionally skewed to make Farr appear “less drunk” at the time of commission of the crimes because the prosecutor believed that Farr would use. the voluntary intoxication defense. However, Farr did not present any evidence at the evidentiary hearing to support his assertion that witness statements concerning his level of intoxication were falsified under the State’s direction. Farr’s claim is baséd on speculation, and accordingly, is denied. Because Farr has not met his burden under Brady, the post-conviction court did not err in finding that the State did not commit any Brady violations.
6. Failure to Investigate and Present Available Mitigating Evidence
Farr asserts that Slaughter was ineffective for failing to investigate and present available mitigating evidence at the new penalty phase hearing,-including evidence of Farr’s psychiatric history. In order to succeed in this ineffective assistance of counsel claim, Farr must establish that Slaughter’s ineffectiveness “deprived [him] of a reliable penalty phase proceeding.” Henry v. State, 937 So.2d 563, 569 (Fla.2006) (quoting Asay v. State, 769 So.2d 974, 985 (Fla.2000)). On review, we must determine whether the “investigation supporting counsel’s decision not to introduce mitigating evidence.... was itself reasonable.” Wiggins v. Smith, 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (emphasis in original). Therefore, we must examine counsel’s reasons for not investigating and presenting mitigation. Sliney v. State, 944 So.2d 270, 281-82 (Fla.2006). Here, the reason that counsel did not introduce mitigating evidence is clear: Farr instructed him not to do so as demonstrated in a December 7, 1993, letter. Farr also stated in the letter that he did not wish Dr. Mhatre to testify about any mitigating evidence, and Farr himself took the stand and belied, discredited, and refuted virtually the entire mitigation case. Slaughter had discussed with Farr several mitigating factors which Slaughter had derived from reviewing the entire record on appeal, the court files, and his office files.
Although Farr has the right to waive a penalty phase mitigation presentation, see Ocha v. State, 826 So.2d 956, 961 (Fla.2002), “counsel must first investigate all avenues and advise the defendant so that the defendant reasonably understands *781 what is being waived and its ramifications and hence is able to. make an informed, intelligent decision.” State v. Lewis, 838 So.2d 1102, 1113 (Fla.2002) (footnote omitted); see also Koon v. Dugger, 619 So.2d 246, 249 (Fla.1993). Moreover, to effectuate this waiver,
counsel must inform the court on the record of the defendant’s decision. Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what that evidence would be. The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel’s recommendation, he wishes to waive presentation of penalty phase evidence.
Koon, 619 So.2d at 250.
It is clear that in this case the Koon requirements were met. Slaughter informed the court on the record of Farr’s decision, indicated that after reviewing the entire appellate record, court file, and his office file, he was unable to find any other mitigating circumstances, and Farr himself confirmed that he wanted Slaughter to carry out Farr’s instructions, set forth in the December 7, 1993, letter, despite the fact that Slaughter had discussed with him possible mitigation circumstances. Moreover, the record shows that the mitigation evidence presented at the evidentiary hearing was the same mitigation, albeit in greater detail, that existed in the record at the time of Farr’s new penalty phase proceeding.[18] More importantly, even if Slaughter’s performance was deficient here, Farr has not satisfied the prejudice prong. Slaughter was aware of the mitigation that was presented at the evidentia-ry hearing and any additional mitigating evidence may have been futile as Farr expressly disavowed available mitigation at the new penalty phase proceeding. Consequently, the trial court did not err in denying this claim.
7. Sentencing Order
Farr claims that his sentencing order was impermissibly authored by the prosecutor, and that the trial court did not independently weigh the aggravators and mitigators in his case. A trial court is prohibited from directing the State to prepare the sentencing order where the court has not independently determined the specific aggravating and mitigating circumstances in a case. Patterson v. State, 513 So.2d 1257, 1261-63 (Fla.1987). This claim, however, is proeedurally barred because it was not raised on direct appeal. See Blackwelder v. State, 851 So.2d 650, 652 (Fla.2003).
Farr further argues that Slaughter was ineffective at trial in not objecting to the sentencing order. The trial court did not simply copy the State’s sentencing memorandum verbatim. The record indicates that after the conclusion of the presentation by the defense and the State, the trial judge retired to his chambers. When the judge emerged, he showed both defense counsel and the State changes he had made to the State’s sentencing memorandum. Specifically, the trial judge had incorporated Farr’s resentencing testimony into the State’s memorandum. The trial court also included a statement that it had searched the entire record and had not found other circumstances that would mitigate Farr’s conduct on the night of the murder. Therefore, because the trial court did conduct an independent determination of aggravators and mitigators in Farr’s case, Slaughter had no basis to *782 object to the procedure employed by the court. Accordingly, this claim was properly denied by the postconviction court.
8. Failure to Investigate Farr’s Psychiatric History at Both the Guilt Phase and Penalty Phase
Farr claims that Slaughter was ineffective in failing to pursue mental health defenses. As to the guilt phase, Farr does not specifically address what mental health defenses counsel failed to pursue, and how they would have prevented him from pleading guilty and instead insist on going to trial. As to the penalty phase, this claim was raised in Farr’s ineffective assistance of counsel claim for failure to present available mitigation. As we stated above, Slaughter was aware of Farr’s psychiatric history, and discussed mental mitigation factors with Farr, but Farr chose not to present a mitigation case. Therefore, the trial court properly denied this claim.
9. The State’s Communications with Farr
Farr argues that the State improperly communicated with him while he was represented by Slaughter. Farr argues that the State’s communications with him were improper and manipulated him into pleading guilty. Farr points to three encounters between himself and Frank Owens, the Lake City Chief of Police, as well as to several letters he wrote to the prosecution. However, the record indicates that each encounter Farr had with law enforcement while represented by Slaughter, as well as Farr’s correspondence with the prosecutor, were on his own initiative.[19] Farr was “free to volunteer a statement to police on his ... own initiative at any time on any subject in the absence of counsel,” see Traylor v. State, 596 So.2d 957, 966 (Fla.1992), and cannot now complain of this contact with police or the prosecutor. Moreover, the claim concerning the presentencing communication with Farr is procedurally barred because it could have been raised on direct appeal. See Schoenwetter v. State, 46 So.3d 535, 561 (Fla.2010). Therefore, the trial court did not err in denying this claim.
10.Failure to Challenge Prosecutorial Misconduct
Farr also claims that Slaughter was ineffective in failing to object to, challenge, and confront the State’s Brady violation, the improprieties regarding the sentencing order, and the State’s unlawful contact and communications with Farr in violation of Farr’s rights under the Fifth, Sixth, Eight, and Fourteenth Amendments to the United States Constitution. However, because Farr has failed to demonstrate any misconduct on behalf of the State in this case, any objection by Slaughter would have been without merit. Slaughter “cannot be deemed ineffective for failing to make a meritless objection.” See Hitchcock v. State, 991 So.2d 337, 361 (Fla.2008). Therefore, the trial court did not err in denying this claim.
11.“Motion to Disqualify” Claim
Farr claims that the postconviction court manifested bias against him and in favor of the State during the evidentiary *783 hearing below. According to Farr, this bias is demonstrated by the postconvietion court’s refusal to allow Farr’s postconviction counsel to make arguments, introduce certain evidence, and proffer certain testimony that the postconviction court ruled inadmissible, as well as by the postconviction court’s instruction to the State to object to certain evidence, its unprofessional behavior toward certain defense witnesses and Farr’s counsel,[20] and its ruling to allow the State to cross-examine an expert witness using a document from its own files and then refusing to allow the defense to introduce the same document for lack of authentication.
The postconviction court did not abuse its discretion in denying Farr’s motion to disqualify because Farr largely appears to have exhibited disagreement with its rulings. Such disagreement is insufficient to establish that a recusal motion was improperly denied. See Jackson v. State, 599 So.2d 103, 107 (Fla.1992) (“The fact that a judge has previously made adverse rulings is not an adequate ground for recusal.”). Moreover, as the State notes, the postcon-viction court also overruled several of the State’s objections, and the State was not immune from the judge’s admonishments. Although some of the judge’s comments to Farr’s postconviction counsel and the defense witnesses may have been improper, rude, or gratuitous, that alone does not support a conclusion that the judge was unfair and not impartial.
II. Habeas Corpus Petition
Farr has also raised several claims of ineffective assistance of appellate counsel through a petition for writ of habe-as corpus. Consistent with the Strickland standard, to grant habeas relief based on ineffectiveness of appellate counsel, we must determine:
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000); Thompson v. State, 759 So.2d 650, 660 (Fla.2000). In raising such a claim, “[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based.” Freeman, 761 So.2d at 1069; see also Knight v. State, 394 So.2d 997, 1001 (Fla.1981). Claims of ineffective assistance of appellate counsel may not be used to camouflage issues that should have been presented on direct appeal or in a postconviction motion. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000).
1. Ake Claim
In his first habeas claim, Farr asserts that Dr. Mhatre never evaluated Farr for mitigation, and appellate counsel was ineffective in failing' to raise this claim on appeal. In Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the United States Supreme Court said that “when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate *784 examination and assist in evaluation, preparation, and presentation of the defense.” Id. at 83, 105 S.Ct. 1087. In Farr’s case, the record reveals that Slaughter requested a mental health evaluation, and one was ordered and completed by Dr. Mhatre. The evaluation was not intended for mitigation purposes.[21] To the extent Farr is criticizing the quality of the evaluation rendered by Dr. Mhatre, this claim is without merit. First, it is unlikely that Farr would have permitted an evaluation at the time of the sentencing strictly for mitigation purposes, as Farr insisted on waiving his mitigation presentation. In addition, Dr. Mha-tre’s report did indicate several areas of mitigation which were available to be presented if Farr wished to do so. Therefore, Farr has failed to demonstrate that he had a meritorious Ake claim, and as such, appellate counsel was not ineffective in failing to raise this claim on direct appeal. Thompson, 759 So.2d at 668 (“[Ajppellate counsel cannot be deemed ineffective for failing to raise a meritless issue.”).
2. Incompetency Claim
In his second habeas claim, Farr argues that appellate counsel was ineffective in failing to assert on appeal that the trial court erred in proceeding with the plea hearing without conducting a competency evaluation and hearing. Pursuant to Florida Rule of Criminal Procedure 3.210(b), a trial court must hold a hearing to determine a defendant’s mental condition when it has reasonable ground to believe that a defendant is not mentally competent to proceed.[22] Farr argues that his suggestion to the State for him to be charged with premeditated murder, his request for the death penalty, his waiver of a penalty phase jury and a mitigation presentation, and his characterization of the prosecutor and chief of police as his “friends,” constituted reasonable grounds for the trial court to order a competency hearing. However, Dr. Mhatre’s report concluded that Farr was competent, and, both at the plea hearing and the sentencing hearing, Slaughter informed the trial court that Farr had been found to be competent. Under these circumstances, the trial court did not have reasonable grounds to believe that Farr was incompetent to proceed. Thus, appellate counsel was not ineffective for failing to raise this competency issue on direct appeal.
3. The Claim of Invalidity of Farr’s Waivers of a Penalty Phase Jury and Mitigating Evidence
In his third habeas claim, Farr argues that appellate counsel was ineffective for failing to assert on direct appeal that Farr’s waiver of a penalty phase jury and mitigation was not knowing, intelligent and voluntary. As the basis for his claim that his waiver was not voluntary, Farr asserts that Slaughter failed to adequately investigate mitigating circumstances.[23] However, Slaughter made Farr aware of the potential mitigation, yet Farr knowingly chose not to present mitigation. Be *785 cause Farr’s waiver of mitigation and a penalty phase jury was voluntary, appellate counsel was not ineffective for failing to raise a meritless issue. Thompson, 759 So.2d at 663. Therefore, Farr’s claim is without merit.
4. Aggravating Factors, Corpus Delicti, and the Evidence at Sentencing
In his final habeas claim, Farr raises three subclaims. First, Farr claims that appellate counsel was ineffective in failing to raise the issue that the aggravating factors found by the trial court were not supported by competent, substantial evidence. In the first direct appeal, we agreed with the trial court that the four aggravating factors found by the trial court “clearly were established beyond a reasonable doubt.” Farr, 621 So.2d at 1370.[24] Thus, it is clear that this Court found that the aggravators were established even if the issue was not raised by appellate counsel. Farr has failed to establish ineffective assistance of appellate counsel because no prejudice has been demonstrated. Second, Farr claims that the trial court’s reliance on his confession in finding Farr guilty violated the corpus delicti. This subclaim is also without merit. Pursuant to the principle of corpus delicti, “[bjefore a confession or statement may be admitted, there must be prima facie proof tending to show the crime was committed.” Tanzi v. State, 964 So.2d 106, 116 (Fla.2007) (quoting Schwab v. State, 636 So.2d 3, 6 (Fla.1994)). A prima facie case of felony murder does not require proof of intent to kill. Thus, contrary to Farr’s argument, the confession of intent could not have been the basis for the trial court’s finding of guilt as to the felony murder charge. Finally, Farr claims that the trial court’s reliance on unreliable evidence at sentencing violated Farr’s rights to an individualized sentencing. This claim also fails because it is procedurally barred as it was raised on direct appeal. See Breedlove v. Singletary, 595 So.2d 8, 10 (Fla.1992).
CONCLUSION
For the reasons expressed above, we affirm the trial court’s denial of postconviction relief and we deny Farr’s petition for habeas corpus relief.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
CANADY, J., concurs in result.

. Farr was indicted for: (1) grand theft (for stealing a gun from his uncle’s home earlier on the day of the crimes); (2) attempted burglary of Lynch while armed with a firearm; (3) attempted robbery of Lynch while armed with a firearm; (4) attempted kidnapping of Lynch while armed with a firearm; (5) attempted kidnapping of Thomas while armed with a firearm; (6) attempted murder of Lynch; (7) attempted murder of Thomas; (8) *773 burglary of Todd while armed with a firearm; (9) kidnapping of Bryant while armed with a firearm; (10) kidnapping of Todd while armed with a firearm; (11) robbery of Todd while armed with a firearm; and (12) first-degree felony murder of Bryant.

. The mitigating evidence in the record included presentence investigation reports and a psychiatric evaluation. Id. at 1369.

. Before we rendered the second direct appeal decision, Farr filed a waiver of his right to seek postconviction relief with the trial court.

.Appellate counsel also argued that Farr’s resentencing testimony was self-serving and unreliable, and that our holding in Hamblen v. State, 527 So.2d 800 (Fla.1988), had been modified by more recent decisions. As to that argument, we held that Klokoc v. State, 589 So.2d 219 (Fla.1991), where the trial court appointed special counsel to present mitigation after the defendant forbade his own attorney to do so — did not modify the core holding in Hamblen that there is no constitutional requirement that such a procedure be followed. Farr, 656 So.2d at 450. We also rejected, as procedurally barred, Farr’s assertions that (1) this Court should recede from *774 Hamblen; and (2) the trial court improperly found aggravating factors. Id. at 450 n. 1.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. Farr sent various letters to Slaughter before he entered his plea. Slaughter testified at the evidentiary hearing that he had written at least two letters to Farr, had at least one telephone conference with him, and one meeting with him at the courthouse.

. On January 10, 1991, in a letter to Farr, Slaughter stated that he was beginning to review Farr's indictment. Slaughter also stated that the notes from one of Farr's interviews and Farr’s letters had given him a fairly clear picture of Farr's version of the facts. Finally, Slaughter stated that he would visit Farr within the next several days. On February 14, 1991, Slaughter wrote Farr another letter, which stated: (1) he had provided Farr with discovery materials during a recent meeting at the courthouse; (2) a copy of the order appointing a defense expert had been mailed to Farr; (3) there was no basis for filing a motion for statement of particulars, nor was a motion for severance of offenses appropriate at the time, and that he was confused as to Farr’s request for a motion for continuance as Farr indicated that he wanted the case to be expedited; (4) a face-to-face conference was not necessary at the time; and (5) Slaughter would discuss Farr’s case (excluding confidential matters) with anyone whenever Slaughter believed that it would be advantageous to Farr.

. For example. Slaughter requested a mental health examination of Farr which was completed by Dr. Mhatre. At the plea hearing, Slaughter disclosed to the trial court that he had requested the evaluation because Farr was requesting the death sentence, and Slaughter wanted to make sure that Farr "knew what he was doing.” Slaughter informed the trial judge that Dr. Mhatre found Farr to be competent.

. When the murder was committed — in December of 1990 — voluntary intoxication was recognized as a defense. See § 775.051, Fla. Stat. (2011) (abolishing voluntary intoxication defense effective October 1, 1999).

.This subclaim is also repeated as the third claim for postconviction relief.

. Slaughter’s experience was that in order for an intoxication defense to be successful, Farr would have had to testify.

. On February 20, 1991, Farr wrote a letter to the prosecution indicating that Farr intentionally crashed the vehicle so that he could kill himself and the victim. Farr also detailed how he twice told the victim to get out of the vehicle, but she refused, and Farr told her that the night was going "to have a sad end.” In addition, Farr stated in the letter that he was aiming at Thomas’ heart. These admissions by Farr to the prosecution would seriously undercut an intoxication defense.

. This subclaim is also repeated as the fourth claim for postconviction relief.

. The plea hearing was held on April 2, 1991.

. Former cellmate Kenneth Texton testified that after the beating, Farr stated he was worried about what would happen in prison, and that if he was going to fear for his life every day while in prison, it was better for him to receive the death penalty. Texton also testified that Farr was fearful that the victim had several family members associated with the Department of Corrections. Former cellmate Leon Douglas testified that after the beating, Farr became extremely depressed and hopeless that Farr asked if he was going to be subject to abuse for twenty-five years, and stated he could not do it and felt the guards or the Columbia County Sheriff's Office were trying to persuade him through physical force to give up his constitutional rights. Douglas also testified that after the beating, Farr discussed with Douglas how he could obtain a death sentence and make the crime appear more brutal in letters to the victim's family, the state attorney's office, and the judge. Former cellmate Joel Heath testified that after the beating, Farr became para *779 noid, even more depressed, and decided that he deserved the death penalty.

. Farr stated in pertinent part in his March 14, 1991, letter to Slaughter:
[I]s there something you had planned I know nothing of? I truly don’t see any way out. True, I did not mean any of that night to take place nor can I understand why it did, but it did, now here I sit, my life over. Sir, I have asked you before, don’t let me sit down there a large number of years. If you see you can't have me out in 10 to 15 years, no more, just let the ball roll.

. In United States v. Ruiz, 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002), the United States Supreme Court held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.” Id. at 633, 122 S.Ct. 2450 (emphasis added); see also United States v. Moussaoui, 591 F.3d 263, 281 n. 14 (4th Cir.2010) ("Moussaoui’s constitutional claims under Brady ... are barred by his guilty plea.”); United States v. Conroy, 567 F.3d 174, 179 (5th Cir.2009) ("Conroy’s guilty plea precludes her from claiming that the government’s failure to disclose the FBI report was a Brady violation.”). We assume arguendo that Farr is not precluded from raising his Brady claim because he pled guilty.

. Farr presented fifteen mitigation witnesses at the evidentiary hearing who testified about Farr’s psychiatric problems, childhood abuse, and substance abuse issues.

. The first encounter occurred on December 12, 1990, one day before Slaughter's appointment. The interview transcript of that encounter indicates that the police requested, and Farr agreed, that they be allowed to question him. During the interview, Farr was read his Miranda warnings, which he waived. The second encounter on January 17, 1991, occurred at the request of Farr. Chief Owens again Mirandized Farr, and Farr gave a recorded statement wherein he said that he could not remember parts of the night of the crash, but that he accepted blame for the victim's death. The third encounter on February 20, 1991, also occurred at the request of Farr.

. Farr claims that the trial judge admonished and stifled defense witnesses and was discourteous to them and to counsel, made abusive and derisive comments to Farr’s post-conviction counsel, and disparaged and reprimanded Farr’s postconviction counsel for being "shrill” and "hysterical.”

. At the plea hearing, Slaughter stated to the trial court that he requested the evaluation because Farr was requesting that he be sentenced to death, and Slaughter wanted to ensure that Farr "knew what he was doing.” In his report, Dr. Mhatre concluded that Farr was competent at both the time of the offense and at the time of the evaluation.

. Rule 3.210(b) existed at the time of Farr’s plea hearing, sentencing, and resentencing in 1991 and 1993.

.Farr maintains that Slaughter's ineffectiveness was apparent on the face of the record. "An ineffective assistance of counsel claim may be brought on direct appeal only in the 'rare' instance where (1) the ineffectiveness is apparent on the face of the record, and (2) it would be ‘a waste of judicial resources to require the trial court to address the issue.’ " Ellerbee v. State, 87 So.3d 730, 739 (Fla.2012) (quoting Blanco v. Wainwright, 507 So.2d 1377, 1384 (Fla.1987)).

. The aggravating factors were: (1) Farr had previously been convicted of another capital felony or of a felony involving the threat of violence to the person; (2) the homicide was committed while Farr was fleeing from the commission of a kidnapping, a robbery, two attempted kidnappings, and an attempted robbery; (3) the homicide was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws; and (4) the homicide was especially heinous, atrocious, or cruel. Id.